**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **DIVERSITY MAX, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:14-cv-2066** |
| | ) | |
| **DAVID WALLER, W² LIMITED,** | ) | |
| **WALLER MARINE, INC., WALLER** | ) | |
| **BERMUDA, LTD., POLAR** | ) | |
| **ENERGY (JERSEY) LIMITED, and** | ) | |
| **TAYLOR NORTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Comes now Plaintiff Diversity Max, LLC, by counsel, and for its Complaint and Demand

for Jury Trial against Defendants David Waller, W² Limited, Waller Marine, Inc., Waller Bermuda

Ltd., Polar Energy (Jersey) Limited, and Taylor Norton, states as follows:

<u>I.</u>

<u>PARTIES</u>

1. Diversity Max, LLC ("Plaintiff") is a limited liability company organized under the laws of

the State of Indiana, with its principal place of business in Indianapolis, Indiana.

2. Defendant David Waller ("Waller") is a resident of the State of Texas.  Waller controls the

actions of each of the entity Defendants.

3. Defendant W² Limited ("W²") is a limited liability company registered in the Cayman

Islands with its principal place of business at 14410 Sylvanfield Drive in Houston, Texas.

4. The principals of Defendant W² include David Waller.  Defendant David Waller has

unlawfully asserted control of all actions of W².

1

5. Defendant Waller Marine, Inc. ("Waller Marine") is a Texas corporation with its principal place of business and offices at 14410 Sylvanfield Drive in Houston, Texas.

6. Defendant Waller Bermuda, Ltd. ("Waller Bermuda") is a limited liability company organized under the laws of the country of Bermuda. Defendants have alleged in other litigation that Defendant Waller Bermuda's principal place of business is Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda.

7. Defendant Polar Energy (Jersey) Limited ("Polar") is a limited liability company organized under the laws of the Channel Islands with its principal place of business being 14410 West Sylvanfield in Houston, Texas.

8. Defendant Taylor Norton ("Norton") is believed to be chief general counsel and an officer of Waller Marine, Inc. Defendant Norton is believed to be a resident of New Orleans, Louisiana. Defendant Norton together with Defendant Waller control and direct the activity of the entity Defendants. Defendant Norton also serves as counsel to the other entity Defendants.

II.

<u>JURISDICTION AND VENUE</u>

9. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs and is between individuals and entities located and/or maintaining principal places of businesses in different states.

10. The Court also has jurisdiction over this matter pursuant to 18 U.S.C. § 1961 *et seq.* (the "RICO Claims").

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Indiana, the Plaintiff is organized under the laws of the State of Indiana with its principal place of business in Indiana, the disputed funds were wired from Indiana, the disputed funds are owed to an entity organized under the laws of the State of Indiana, with its principal place of business in Indiana, and all or some of the Defendants solicited money from an Indiana entity.

III.

GENERAL ALLEGATIONS

A.

ALLEGATIONS APPLICABLE TO THE SYMPHONY TRANSACTION

12. Plaintiff is a company engaged in various business ventures including energy related ventures.

13. In 2011, principals of Plaintiff were introduced to Defendant Waller by Isaac Gibson of Wintara Energy, Inc. Defendant Waller is believed to be the controlling shareholder/member of various business enterprises which have their principal place of business in Houston, Texas.  Those entities included Defendants Waller Marine, $W^2$, Polar and Waller Bermuda.

14. Defendant Waller advised Plaintiff that Defendant Waller was involved in a highly promising natural gas project in the Country of Nigeria.

15. According to Defendant Waller, Defendant Waller Marine was engaging in a joint venture project with related companies operating under the names Global Energy USA, Inc., Global Integrated Energy System Limited, and Global Gas and Refining Ltd. (collectively "Global").  Defendant Waller advised Plaintiff that Global was owned and operated by

3

an individual named Kenneth Yellowe ("Yellowe"). The project involved refining flair gas generated by large oil companies such as Chevron Corporation (hereinafter the "Nigerian Project").

16. Plaintiff became interested in the Nigerian Project following discussions with Defendant Waller and agents of Defendant Waller and/or Defendant Waller Marine.

17. Defendant Waller and Yellowe began to solicit Plaintiff and Wintara to invest large sums of money in the Nigerian Project. The Nigerian Project had significant capital needs involving many millions of dollars.

18. Upon information and belief, Defendant Waller had previously created Defendant Polar for the purposes of furthering the Nigerian Project.

19. Ultimately, Defendant Waller on one hand, and Plaintiff and Wintara on the other hand, decided to form a joint venture company named $W^2$ Limited ("$W^2$") for the purposes of doing business with Global and Yellowe. Defendant Waller selected Defendant Waller Marine to be his part of the joint venture. The Parties agreed that Defendant Waller Marine would be fifty-one percent (51%) owner of $W^2$ and Plaintiff and Wintara would be forty-nine percent (49%) of $W^2$.

20. Defendant Waller Marine's outside counsel Pat Strong ("Strong") was engaged to form and represent Defendant $W^2$. In June of 2011, Strong selected Diamond Law Associates ("Diamond") in the Cayman Islands to assist forming Defendant $W^2$.

21. In the spring of 2011, Yellowe and Global began to express an immediate need for a capital infusion into Global. The money was allegedly required to ensure Global could secure its interest in the Nigerian Project and preserve certain assets which were subject to various loans and/or third party claims.

22. Defendant Waller, in communications with Plaintiff, inquired if Plaintiff and/or Wintara would immediately loan money to Defendant W$^2$, Defendant Waller and/or Global for uses related to the Nigerian Project.  In conjunction with these discussions, the following representations were made to Plaintiff by Defendant Waller and/or other employees or agents of Defendant Waller and/or Defendant Waller Marine:

   a. Global needed an immediate infusion of cash;

   b. The cash was needed for expenses related to the Nigerian Project.  The Nigerian Project and critical Nigerian Project related assets would be lost without the loan;

   c. A portion of the cash would be utilized to retire existing debt on a large ocean going vessel named the "Symphony."  The Symphony was going to be refitted and utilized on the Nigerian Project (the "Symphony Transaction");

   d. The Symphony had a fair market salvage value of ten to twelve million dollars ($10,000,000.00 to $12,000,000.00);

   e. If Plaintiff agreed to immediately loan money to Defendant Waller for use on the Nigerian Project, Plaintiff's loan would be fully secured by a first lien security position on the Symphony;

   f. Defendant Waller and/or his employees had unique expertise in marine vessels, marine vessel uses, marine vessel values and the titling and perfection of liens on marine vessels;

   g. Defendant Waller had or would take all steps necessary to perfect a security interest in favor of Plaintiff in the Symphony to secure a loan from Plaintiff; and

   h. If the loan was not repaid, the Symphony could be readily seized and sold generating more than sufficient funds to repay the loan by Plaintiff.

23. In direct reliance upon the factual representations made by Defendants Waller, Waller Marine and their employees and representatives, Plaintiff agreed to loan the sum of two million five hundred thousand dollars ($2,500,000.00) (the "Loan").

24. The Loan was made in the form of wire transfers to Defendant Waller Marine. Evidence of the wire transfers is attached hereto as Exhibit "A."

25. The Loan was made prior to Defendant Waller and Plaintiff completing documents relating to their $W^2$ joint venture relationship. The sequence of events occurred because Defendant Waller communicated an immediate need for the Loan to save the Nigerian Project.

26. Defendant Waller Marine, at Defendant Waller's direction, transferred the Loan funds to Global.

27. Upon information and belief, Global and Yellowe utilized the Loan proceeds to retire existing debt on the Symphony, and for other expenses related to the Nigerian Project.

28. Defendant Waller and/or Defendant Waller Marine advised Plaintiff that Defendant Waller had, for the benefit of Plaintiff, prepared and filed the required documents to secure and perfect the security interest in the Symphony.

29. Activity continued on the Nigerian Project for a period of months. Ultimately, Global and Yellowe were unable to fulfill Nigerian Project commitments. Plaintiff demanded repayment of the Loan.

30. Defendants Waller and Waller Marine failed to repay the Loan.

31. Defendant Norton is General Counsel to Defendant Waller and various Waller entities, including Defendant Waller Marine.

32. Defendant Norton was intimately involved with the Nigerian Project and represented Defendant Waller in multiple meetings and communications involving the Nigerian Project.

33. Defendant Norton was also familiar with Plaintiff, Plaintiff's involvement with the Nigerian Project and the Loan made by Plaintiff.

34. Defendant Norton was also familiar with Global, Yellowe and the Symphony. Defendant Norton had actual knowledge of the security interest in the Symphony perfected to secure the Loan.

35. Defendant Waller, as the majority owner of Defendant $W^2$, took the lead in efforts to collect past due sums from Yellowe and Global. Defendant Waller assigned the responsibility of pursuing Yellowe and Global to Defendant Norton.

36. In approximately 2012, Defendant Norton engaged outside counsel to pursue litigation against Yellowe, PK Marsym Ltd. ("PKM") and Global. The primary purpose of the litigation was seizing possession of the Symphony and selling the same to repay the Loan. Litigation was commenced at Defendant Norton's direction on or about June 13, 2012, in the Southern District Court of Texas. A copy of the Complaint is attached as Exhibit "B" (hereinafter "Symphony Lawsuit No. 1"). Defendant $W^2$ was a Plaintiff in Symphony Lawsuit No. 1.

37. The Complaint included the following allegations:

    a. 10. On or about June 13, 2011, Polar, Global and PKM executed a letter of agreement ("LOA"). The LOA is attached hereto as Exhibit "A." Under the LOA, Polar agreed to advance funds to Global in the amount of $5 million. *See* Ex. "A,"

p. 1.  The $5 million advance was to be made in two installments of $2,500,000 each. *Id.*, p. 1.

b.  11.  The LOA provided that this transaction shall be memorialized through the execution of a secured promissory note in the amount of $5 million.  *Id.* Accordingly, a Secured Promissory Note (hereinafter the "First Note"), in the amount of $5,000,000, was also executed by and between Polar and Global on or about June 13, 2011.  The First Note is attached hereto as Exhibit "B."

c.  12.  The first advance of $2,500,000.00 was paid to Global on or about June 13, 2011.  This advance was to be used for the payment of past due salaries for Nigerian employees and invoices from vendors, as well as a cash reserve for travel and related expenses, working capital and other general corporate purposes.  *See* Ex. "A," p. 1.

d.  13.  The second advance of $2,500,000.00 was paid to Global and PKM on or about June 27, 2011.  This advance was to be used to pay off the existing vessel mortgagee of the SYMPHONY, which was owned by PKM.  *Id.*  This arrangement allowed PKM to pledge the SYMPHONY to Polar as collateral for its $5,000,000 loan to Global.

38. The two million, five hundred thousand dollars ($2,500,000.00) referenced in the Complaint is the Loan made by Plaintiff for use by Defendant Waller to fund Global.

39. Defendant Norton and outside counsel were well aware of the Loan and the fact the Symphony was pledged to secure the Loan.

40. During the Symphony Lawsuit No. 1, Defendant Norton would periodically update Plaintiff on the status of the legal efforts.  Defendant Norton was aware proceeds from

the sale of the Symphony would be used to repay the Loan.  Defendant Norton even advised Plaintiff of the future costs to dispose of the Symphony.  See Exhibit "C."

41. For reasons which were never explained, Defendant Norton directed Symphony Lawsuit No. 1 be dismissed.  Control of the Symphony was not achieved.  Defendant Norton only provided a rather cryptic explanation for the dismissal.  See Exhibit "D."

42. Defendant Norton then ceased communicating with Plaintiff.

43. Unknown to Plaintiff, in August of 2013, Defendant Waller, with the assistance and at the direction of Defendant Norton, caused the Symphony to be sold to another entity controlled and owned by Defendant Waller named Waller Bermuda, Ltd. for the sum of ten dollars ($10.00).  A copy of the bill of sale is attached as Exhibit "E."  Defendant Waller did not inform the other members or officers of $W^2$ of this suspicious transaction.  Neither Defendant Norton, nor Defendant Waller, informed Plaintiff or its officers of this transaction.  The bill of sale was filed in Hamilton, Bermuda.  Defendant Waller Bermuda did not pay fair market value for the Symphony.

44. Defendant Norton then engaged a second law firm to file a second lawsuit against Yellowe and Global.  In this new suit, only Defendant Waller Bermuda is the plaintiff.  A copy of the Complaint is attached as Exhibit "F" (hereinafter "Symphony Lawsuit No. 2").  Symphony Lawsuit No. 2 made no mention of $W^2$.  The rightful ownership of the Symphony, the existence of Plaintiff and the Loan obligation were concealed from the Court in Symphony Lawsuit No. 2.

45. Neither Defendant Norton, nor Defendant Waller advised the other officers of $W^2$, the other owners of $W^2$ or the Plaintiff of Symphony Lawsuit No. 2.

46. Defendant Waller Bermuda was able to gain control of the Symphony in Symphony Lawsuit No. 2.

47. Defendant Waller Bermuda then sold the Symphony to Jampur International for the sum of three million, two hundred thousand dollars ($3,200,000.00) (the "Sale"). This sum was recently confirmed by attorney Sasha Dimitroff of Baker and Hostetler, outside counsel for Defendant Waller.

48. Defendants Waller and Norton concealed the Sale from Plaintiff.

49. Defendants Waller and Norton then caused the proceeds from the Sale to be wire transferred to the bank accounts of Defendant Waller Marine. The current location of the funds are unknown. Plaintiff believes the wire transfer was ordered by Defendant Norton. Plaintiff also has cause to believe Defendant Norton gave this order with actual knowledge the Sale proceeds belonged to Plaintiff.

50. The Sale was unlawful.

51. The transfer of the Symphony to Defendant Waller Bermuda was a fraudulent conveyance.

52. The Symphony was sold by Defendant Waller at Defendant Norton's direction and control for substantially less than fair market value.

53. Defendants Norton, Waller, W$^2$, Waller Marine, Waller Bermuda and Polar conspired to take unlawful control of the Symphony, sell the same, and retain the Sale proceeds.

54. The proceeds from the Sale have been converted by Defendants Waller and Waller Marine, with the aid and assistance of Defendant Norton.

55. Defendants Norton, Waller, W$^2$, Waller Marine, Waller Bermuda and Polar conspired to deprive from Plaintiff of the benefit of the security interest in the Symphony.

56. Defendants Norton, Waller and Waller Marine knowingly, willfully and intentionally engaged in a concerted plan utilizing wire communications and wire transfers to unlawfully transfer title to the Symphony to enable Defendant Waller and/or Defendant Waller Marine to sell the Symphony and unlawfully retain the proceeds.

57. Defendants Norton and Waller caused $W^2$ to engage in unlawful conduct causing harm to $W^2$ for the exclusive benefit of Defendants Waller and Waller Marine.

58. Plaintiff learned of the actions of the Defendants while searching the internet.

59. Plaintiff, through counsel, delivered multiple notices to the Defendants demanding the Defendants return the converted funds.  See Exhibits "G" and "H" (the "Demand Letters").

60. Defendants failed to timely respond to the Demand Letters.

61. Defendants belatedly responded to the Demand Letters falsely claiming ignorance of the transactions in question.  Defendants Norton and Waller's outside counsel gave conflicting accounts of the Defendants' actions and even conflicted over the amount of funds wired to Defendant Waller Marine from the Sale.

62. Defendants Norton, Waller and Waller Marine jointly or individually authored multiple documents clearly evidencing their prior knowledge of Plaintiff, the Loan and the security interest in the Symphony.  Examples of those documents are attached as Exhibit "I."

B.

ALLEGATIONS APPLICABLE TO THE TELLIER TRANSACTION

63. Plaintiff is a company engaged in various business ventures including energy related ventures.

64. Plaintiff began developing a project in the Dominican Republic, which would require a large volume of natural gas (the "DR Project").

65. Defendants Waller and Waller Marine represented to Plaintiff that Defendants Waller and Waller Marine were marine experts. Defendants knew Plaintiff lacked any expertise with marine vessels.

66. Defendants Waller and Waller Marine advised Plaintiff that Defendant Waller Marine had a contractual interest in a marine vessel which was capable of transporting a large volume of natural gas.

67. Defendants Waller and Waller Marine advised Plaintiff that Defendant Waller Marine had contracted to purchase the aforementioned vessel known as the Tellier (the "Tellier"). Defendants Waller and Waller Marine represented to Plaintiff the contract to purchase the Tellier was or would be drafted in such a manner as to ensure deposits would be refunded if the Tellier did not pass the inspection and survey process or was not suitable for the Plaintiff's requirements.

68. Defendants Waller and Waller Marine described the Tellier as unique in the world and particularly suited for the DR Project. Defendants Waller and Waller Marine expressed an interest in being involved in Plaintiff's DR Project.

69. Defendants Waller and Waller Marine encouraged Plaintiff to supply the purchase funds for the Tellier which could then be utilized for the DR Project.

70. Defendants Waller and Waller Marine represented to Plaintiff that the Tellier would be professionally inspected and surveyed and that if the Tellier did not meet standards set by Defendants Waller and Waller Marine, Plaintiff's money would be refunded.

71. Defendants Waller and Waller Marine represented to Plaintiff that Plaintiff's funds would be secure because of the substantial value of the Tellier, which greatly exceeded the funds being sought from Plaintiff and because of the purchase contract negotiated by Defendants Waller and Waller Marine.

72. Defendants Waller and Waller Marine made these representations in person and by telephone. The face to face representations occurred in Waller's Houston, Texas offices. Upon information and belief, the representations occurred in the months of June and July, 2011.

73. Defendants Waller and Waller Marine represented to the Plaintiff that the deposit for the Tellier required seven hundred fifty thousand dollars ($750,000.00).

74. Defendants Waller and Waller Marine requested the sum of seven hundred fifty thousand dollars ($750,000.00) from Plaintiff to secure the purchase of the Tellier (the "Tellier Funds").

75. Based upon Defendants Waller and Waller Marine's numerous representations and assurances, Plaintiff wired the Tellier Funds from a bank in Indiana to Defendants Waller and Waller Marine. A copy of the wire transfer confirmation is attached as Exhibit "J."

76. Defendants Waller and Waller Marine used the wired Tellier Funds as a down payment on the Tellier. Attached hereto and marked as Exhibit "K" is an email confirming the purchase of the Tellier by Defendant Waller Marine on behalf of Plaintiff.

77. Defendants Waller and Waller Marine subsequently informed Plaintiff that the Tellier did not pass the inspection and survey process.

78. Plaintiff requested the Tellier Funds be refunded as agreed upon by Defendants Waller and Waller Marine.

79. Defendants Waller and Waller Marine, by themselves and through various employees, again assured Plaintiff the Tellier Funds would be refunded to Plaintiff. These assurances were made by telephone and in face to face communications.

80. Plaintiff made repeated demands for the return of the Tellier Funds.

81. Defendants Waller and Waller Marine failed to refund the Tellier Funds to Plaintiff.

82. Upon information and belief, Defendant Norton on behalf of Defendants Waller and Waller Marine directed and controlled activities relating to the Tellier.

83. Defendant Norton, or others on Defendant Norton's behalf, had direct communications with the owners of the Tellier. Those communications occurred via telephone and electronic mails.

84. Defendants Waller, Waller Marine and Norton failed to account to Plaintiff for the Tellier Funds.

85. Plaintiff believes Defendants Waller and Waller Marine misrepresented Defendant Waller Marine's contractual position in the Tellier to entice Plaintiff to wire funds to assist with the purchase of the Tellier.

86. Plaintiff believes Defendants misrepresented the value and uniqueness of the Tellier.

87. Plaintiff believes Defendant Waller Marine was attempting to purchase the Tellier without placing Defendants' own money at risk. Therefore, Defendants Waller, Waller Marine and Norton misrepresented the terms of the Tellier purchase agreement.

88. Plaintiff believes Defendants Waller, Waller Marine and Norton misrepresented to Plaintiff the ability to retrieve the Tellier Funds in the event the Tellier did not pass the inspection and survey process.

89. Plaintiff has cause to believe that in November 2011, the Sellers of the Tellier commenced arbitration against the Defendants Waller and Waller Marine regarding the failed Tellier transaction.

90. Defendants Waller and Waller Marine failed to fully communicate with the Plaintiff regarding the outcome of the arbitration.   Plaintiff has cause to believe Defendants Waller, Waller Marine and Norton, without Plaintiff's consent or approval, entered into an agreement whereby Defendants Waller and Waller Marine agreed to forfeit all or nearly all of the Tellier Funds to the seller of the Tellier.

91. Defendants Waller and Waller Marine failed and continues to fail to account to the Plaintiff for the Tellier Funds or the outcome of the arbitration.

92. Defendants Waller and Waller Marine assumed duties to Plaintiff by agreeing to accept Plaintiff's Tellier Funds.

93. Defendants Waller and Waller Marine owed Plaintiff fiduciary duties.

94. Defendant Norton assumed duties to Plaintiff by agreeing to serve as legal counsel in a transaction where Plaintiff's money was solicited and utilized to purchase the Tellier.

95. Defendant Norton knew Plaintiff was relying upon Norton to protect Plaintiff's Tellier Funds.

96. Defendants Norton, Waller and Waller Marine failed to take steps to protect the Tellier Funds.

97. Defendants Norton, Waller and Waller Marine acted recklessly with regard to the disposition of the Tellier Funds.

98. Defendants Norton, Waller and Waller Marine had no reasonable basis to make the factual representations to Plaintiff regarding the Tellier.

IV.

COUNTS

COUNT I.

CIVIL RICO 18 U.S.C. § 1961 *et seq.*

(Symphony and Tellier Transactions)

99. Plaintiff hereby incorporates rhetorical paragraphs 1 through 98 as if fully set forth herein.

100. Defendants are each owned and/or controlled by Defendant Waller.

101. Defendants have engaged in a scheme to convert money and/or property belonging to Plaintiff.

102. Defendants have acted as a common enterprise for the purpose of advancing their scheme.

103. Defendants Waller and Norton direct and/or control the activities of the entity Defendants.

104. The entity Defendants were organized by Defendants Waller and Norton in the United States and in certain foreign jurisdictions in furtherance of the common enterprise and scheme.

105. Defendants have utilized telephone communications, electronic mails and financial wire transfers in furtherance of their scheme.

A.

Scheme to Unlawfully Seize and Dispose of the Symphony

106. Defendants Waller and Waller Marine were involved in an energy project located in Nigeria (the "Nigerian Project"). The Nigerian Project involved the refinement of flare gas which is a byproduct of oil drilling and refinement operations.

107. The Nigerian Project required large amounts of investment capital.

108. Defendants Waller and Waller Marine were seeking to raise capital for the Nigerian Project. Upon information and belief, Defendant Waller created Defendant Polar for the purposes of furthering the Nigerian Project.

109. Plaintiff invests in energy related projects.

110. Plaintiff and Defendants Waller and Waller Marine began substantive discussions regarding the Nigerian Project. The discussions led to an agreement whereby Plaintiff and Defendants Waller and Waller Marine would form a joint venture known as $W^2$ for the purpose of investing in the Nigerian Project.

111. However, even prior to the joint venture being completed, Waller and Waller Marine solicited loans from Plaintiff related to the Nigerian Project.

112. Defendants Waller and Waller Marine advised Plaintiff the Nigerian Project required immediate funds to pay certain short terms debts and pay debts on equipment needed for the Nigerian Project.

113. According to Defendants Waller and Waller Marine, an essential component of the Nigerian Project was a natural gas vessel known as the Symphony.

114. The Symphony was subject to existing debt of several million dollars which was due or past due.

115. The Nigerian Project also had substantial unpaid debts and obligations.

116. Defendants Waller and Waller Marine sought a loan from Plaintiff to satisfy the past due debts and satisfy the debt related to the Symphony.

117. Defendants Waller and Waller Marine engaged in a series of meetings with Plaintiff. The meetings were designed to induce Plaintiff to make the Loan to resolve the debts referenced in the rhetorical paragraphs 114 and 115.

118. The representatives of Defendants Waller and Waller Marine involved in the meetings included Tom Laird, Bill McCutchins and David Waller.

119. Defendants Waller and Waller Marine engaged in a joint enterprise designed to induce Plaintiff to wire funds to Defendant Waller.  Part of the enterprise was making certain false factual representations to Plaintiff including the following:

    a.  Global needed an immediate infusion of cash;

    b.  The cash was needed for expenses related to the Nigerian Project.  The Nigerian Project and critical Nigerian Project related assets would be lost without the Loan;

    c.  A portion of the cash would be utilized to retire existing debt on a large ocean going vessel named the Symphony.  The Symphony was going to be refitted and utilized on the Nigerian Project (the "Symphony Transaction");

    d.  The Symphony had a fair market salvage value of ten to twelve million dollars ($10,000,000.00 to $12,000,000.00);

    e.  If Plaintiff agreed to immediately loan money to Defendant Waller for use on the Nigerian Project, Plaintiff's Loan would be fully secured by a first lien security position on the Symphony;

    f.  Defendant Waller and/or his employees had unique expertise in marine vessels, marine vessel uses, marine vessel values the titling and perfection of liens on marine vessels;

    g.  Defendant Waller had or would take all steps necessary to perfect a security interest in favor of Plaintiff in the Symphony to secure the Loan from Plaintiff; and

    h.  If the Loan was not repaid, the Symphony could be readily seized and sold generating more than sufficient funds to repay the Loan by Plaintiff.

120. In direct reliance upon the factual representations made by Defendants Waller, Waller Marine and their employees and representatives, Plaintiff agreed to loan the sum of two million five hundred thousand dollars ($2,500,000.00).

121. The Loan was made in the form of wire transfers to Defendant Waller Marine.

122. The Loan was made prior to Defendant Waller and Plaintiff completing documents relating to their W$^2$ joint venture relationship.  The sequence of events occurred because Defendant Waller communicated an immediate need for the Loan to save the Nigerian Project.

123. Defendant Waller Marine, at Defendant Waller's direction, transferred the Loan funds to Global.

124. Upon information and belief, Global and Yellowe utilized the Loan proceeds to retire existing debt on the Symphony and for other expenses related to the Nigerian Project.

125. Defendant Waller and/or Defendant Waller Marine advised Plaintiff that Defendant Waller had, for the benefit of Plaintiff, prepared and filed the required documents to secure and perfect the security interest in the Symphony.

126. Activity continued on the Nigerian Project for a period of months.  Ultimately, Global and Yellowe were unable to fulfill Nigerian Project commitments.  Plaintiff demanded repayment of the Loan.

127. Yellowe and Global failed to repay the Loan.  Defendants Waller and Waller Marine failed to repay the Loan.

128. Defendant Norton is General Counsel to Defendant Waller and various Waller entities, including Defendant Waller Marine.

129. Defendant Norton was intimately involved with the Nigerian Project and represented Defendant Waller in multiple meetings and communications involving the Nigerian Project.

130. Defendant Norton was also familiar with Plaintiff, Plaintiff's involvement with the Nigerian Project and the Loan made by Plaintiff.

131. Defendant Norton was also familiar with Global, Yellowe and the Symphony. Defendant Norton had actual knowledge of the security interest in the Symphony perfected to secure the Loan.

132. Defendant Waller, as the majority owner of $W^2$, took the lead in efforts to collect past due sums from Yellowe and Global. Defendant Waller assigned the responsibility of pursuing Yellowe and Global to Defendant Norton.

133. In approximately 2012, Defendant Norton engaged outside counsel to pursue litigation against Yellowe, PK Marsym Ltd. ("PKM") and Global. The primary purpose of the litigation was seizing possession of the Symphony and selling the same to repay the Loan. Litigation was commenced at Defendant Norton's direction on or about June 13, 2012, in the Southern District Court of Texas ("Symphony Lawsuit No. 1"). See Exhibit "B." $W^2$ was a Plaintiff in Symphony Lawsuit No. 1.

134. The Complaint included the following allegations:

a.  10.  On or about June 13, 2011, Polar, Global and PKM executed a letter of agreement ("LOA"). The LOA is attached hereto as Exhibit "A." Under the LOA, Polar agreed to advance funds to Global in the amount of $5 million. *See* Ex. "A," p. 1. The $5 million advance was to be made in two installments of $2,500,000 each. *Id.*, p. 1.

20

b. 11. The LOA provided that this transaction shall be memorialized through the execution of a secured promissory note in the amount of $5 million. *Id.* Accordingly, a Secured Promissory Note (hereinafter the "First Note"), in the amount of $5,000,000, was also executed by and between Polar and Global on or about June 13, 2011. The First Note is attached hereto as Exhibit "B."

c. 12. The first advance of $2,500.000.00 was paid to Global on or about June 13, 2011. This advance was to be used for the payment of past due salaries for Nigerian employees and invoices from vendors, as well as a cash reserve for travel and related expenses, working capital and other general corporate purposes. *See* Ex. "A," p 1.

d. 13. The second advance of the $2,500,000.00 was paid to Global and PKM on or about June 27, 2011. This advance was to be used to pay off the existing vessel mortgagee of the SYMPHONY, which was owned by PKM. *Id.* This arrangement allowed PKM to pledge the SYMPHONY to Polar as collateral for its $5,000,000 loan to Global.

135. The two million five hundred thousand dollars ($2,500,000.00) referenced in the Complaint is the Loan made by Plaintiff for use by Defendant Waller to fund Global.

136. Defendant Norton and outside counsel were well aware of the Loan and the fact the Symphony was pledged to secure the Loan.

137. During the Symphony Lawsuit No. 1, Defendant Norton would periodically update Plaintiff on the status of the legal efforts. Defendant Norton was aware proceeds from the sale of the Symphony would be used to repay the Loan. Defendant Norton even advised Plaintiff of the future costs to dispose of the Symphony. *See* Exhibit "C."

138. For reasons which were never explained, Defendant Norton directed Symphony Lawsuit No. 1 be dismissed.  Control of the Symphony was not achieved.  Defendant Norton only provided a rather cryptic explanation for the dismissal.  See Exhibit "D."

139. Defendant Norton then ceased communicating with Plaintiff.

140. Unknown to Plaintiff, in August of 2013, Defendant Waller, with the assistance and at the direction of Defendant Norton, caused the Symphony to be sold from $W^2$ to another entity controlled and owned by Defendant Waller named Waller Bermuda, Ltd. for the sum of ten dollars ($10.00).  See Exhibit "E."  Defendant Waller did not inform the other members or officers of $W^2$ of this suspicious transaction.  Neither Defendant Norton, nor Defendant Waller, informed Plaintiff or its officers of this transaction.  The bill of sale was filed in Hamilton, Bermuda.  Defendant Waller Bermuda did not pay fair market value for the Symphony.

141. Defendant Norton then engaged a second law firm to file a second lawsuit against Yellowe and Global ("Symphony Lawsuit No. 2").  In this new suit, only Defendant Waller Bermuda was the Plaintiff.  See Exhibit "F."  Symphony Lawsuit No. 2 made no mention of $W^2$.  The rightful ownership of the Symphony, the existence of Plaintiff and the Loan obligation were concealed from the Court in Symphony Lawsuit No. 2.

142. Neither Defendant Norton, nor Defendant Waller advised the other officers of Defendant $W^2$, the other owners of $W^2$ or the Plaintiff of Symphony Lawsuit No. 2.

143. Defendant Waller Bermuda was able to gain control of the Symphony in Symphony Lawsuit No. 2.

144. Defendant Waller Bermuda then sold the Symphony to Jampur International for the sum of three million, two hundred thousand dollars ($3,200,000.00).  This sum was recently

confirmed by attorney Sasha Dimitroff of Baker and Hostetler, outside counsel for Defendant Waller (the "Sale").

145. Defendants Waller and Norton concealed the Sale from the Plaintiff.

146. Defendants Waller and Norton then caused the proceeds from the Sale to be wire transferred to the bank accounts of Defendant Waller Marine. The current location of the funds is unknown. Plaintiff believes the wire transfer was ordered by Defendant Norton. Plaintiff also has cause to believe Defendant Norton gave this order with actual knowledge the Sale proceeds belonged to Plaintiff.

147. The Sale was unlawful.

148. The transfer of the Symphony to Defendant Waller Bermuda was unlawful and a fraudulent conveyance.

149. The Symphony was sold by Defendant Waller, at Defendant Norton's direction and control for substantially less than fair market salvage value.

150. Defendants Norton, Waller, $W^2$, Waller Marine, Waller Bermuda and Polar conspired to take unlawful control of the Symphony, sell the same, and retain the Sale proceeds.

151. The proceeds from the Sale have been converted by Defendants Waller and Waller Marine, with the aid and assistance of Defendant Norton.

152. Defendants Norton, Waller, $W^2$, Waller Marine, Waller Bermuda and Polar conspired to deprive from Plaintiff of the benefit of the security interest in the Symphony.

153. Defendants Norton, Waller and Waller Marine knowingly, willfully and intentionally engaged in a concerted plan utilizing wire communications and wire transfers to unlawfully transfer title to the Symphony to enable Defendant Waller and/or Defendant Waller Marine to sell the Symphony and unlawfully retain the proceeds.

154. Defendants Norton and Waller caused Defendant $W^2$ to engage in unlawful conduct causing harm to $W^2$ for the exclusive benefit of Defendants Waller and Waller Marine.

155. Plaintiff learned of the actions of the Defendants while searching the internet.

156. Plaintiff, through counsel, delivered the Demand Letters to the Defendants demanding the Defendants return the converted funds.  See Exhibits "G" and "H."

157. Defendants failed to timely respond to the Demand Letters.

158. Defendants belatedly responded to the Demand Letters falsely claiming ignorance of the transactions in question.  Defendants Norton and Waller's outside counsel gave conflicting accounts of the Defendants' actions and even conflicted over the amount of funds wired to Defendant Waller Marine from the Sale.

159. Defendants Norton, Waller and Waller Marine jointly or individually authored multiple documents clearly evidencing their prior knowledge of Plaintiff, the Loan and the security interest in the Symphony.  See Exhibit "I."

160. Defendants conspired to deprive Plaintiff of its interest in the Symphony.

161. Defendants' scheme involved multiple acts utilizing electronic mails, interstate and international electronic communications and wire transfers.

162. Defendants' scheme involved seizing property through legal process in the United States, retitling the property in a foreign country, selling the property in a foreign country and moving the unlawfully obtained Sale proceeds through wire transfers initiated in a foreign country to bank accounts located in the United States.

163. Plaintiff has been damaged by Defendants' pattern of conduct and scheme.

164. Defendants' conduct constitutes prohibited activity under 18 U.S.C. § 1962.

165. Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to treble damages, together with costs, including reasonable attorney's fees.

WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller, Waller Marine Inc., W$^2$ Limited, Waller Bermuda, Ltd., Polar Energy (Jersey) Limited and Taylor Norton, jointly and severally, and award Plaintiff damages in the amount of seven million, five hundred thousand dollars ($7,500,000.00), together with interest, attorney's fees and related litigation costs and for all other relief that is just and proper in the premises.

B.

<u>Unlawful Scheme to Deprive Plaintiff of the Tellier Funds</u>

166. Plaintiff is a company engaged in various business ventures including energy related ventures.

167. Plaintiff began developing a project in the Dominican Republic, which would require a large volume of natural gas (the "DR Project").

168. Defendants Waller and Waller Marine represented to Plaintiff that Defendants Waller and Waller Marine were marine experts. Defendants knew Plaintiff lacked any expertise with marine vessels.

169. Defendants Waller and Waller Marine advised Plaintiff that Defendant Waller Marine had a contractual interest in a marine vessel which was capable of transporting a large volume of natural gas.

170. Defendants Waller and Waller Marine advised Plaintiff that Defendant Waller Marine had contracted to purchase the aforementioned vessel known as the Tellier (the "Tellier"). Defendants Waller and Waller Marine represented to Plaintiff the contract to purchase

the Tellier was or would be drafted in such a manner as to ensure deposits would be refunded if the Tellier did not pass the inspection and survey process or was not suitable for the Plaintiff's requirements.

171. Defendants Waller and Waller Marine described the Tellier as unique in the world and particularly suited for the DR Project.  Defendants Waller and Waller Marine expressed an interest in being involved in Plaintiff's DR Project.

172. Defendants Waller and Waller Marine encouraged Plaintiff to supply the purchase funds for the Tellier which could then be utilized for the DR Project.

173. Defendants Waller and Waller Marine represented to Plaintiff that the Tellier would be professionally inspected and surveyed and that if the Tellier did not meet standards set by Defendants Waller and Waller Marine, Plaintiff's money would be refunded.

174. Defendants Waller and Waller Marine represented to Plaintiff that Plaintiff's funds would be secure because of the substantial value of the Tellier, which greatly exceeded the funds being sought from Plaintiff and because of the purchase contract negotiated by Defendants Waller and Waller Marine.

175. Defendants Waller and Waller Marine made these representations in person and by telephone.  The face to face representations occurred in Waller's Houston, Texas offices. Upon information and belief, the representations occurred in the months of June and July, 2011.

176. Defendants Waller and Waller Marine represented to the Plaintiff that the deposit for the Tellier required seven hundred fifty thousand dollars ($750,000.00).

177. Defendants Waller and Waller Marine requested the sum of seven hundred fifty thousand dollars ($750,000.00) from Plaintiff to secure the purchase of the Tellier (the "Tellier Funds").

178. Based upon Defendants Waller and Waller Marine's numerous representations and assurances, Plaintiff wired the Tellier Funds from a bank in Indiana to Defendants Waller and Waller Marine. A copy of the wire transfer confirmation is attached as Exhibit "J."

179. Defendants Waller and Waller Marine used the wired Tellier Funds as a down payment on the Tellier. Attached hereto and marked as Exhibit "K" is an email confirming the purchase of the Tellier by Defendant Waller Marine on behalf of Plaintiff.

180. Defendants Waller and Waller Marine subsequently informed Plaintiff that the Tellier did not pass the inspection and survey process.

181. Plaintiff requested the Tellier Funds be refunded as agreed upon by Defendants Waller and Waller Marine.

182. Defendants Waller and Waller Marine, by themselves and through various employees, again assured Plaintiff the Tellier Funds would be refunded to Plaintiff. These assurances were made by telephone and in face to face communications.

183. Plaintiff made repeated demands for the return of the Tellier Funds.

184. Defendants Waller and Waller Marine failed to refund the Tellier Funds to Plaintiff.

185. Upon information and belief, Defendant Norton on behalf of Defendants Waller and Waller Marine directed and controlled activities relating to the Tellier.

186. Defendant Norton, or others on Defendant Norton's behalf, had direct communications with the owners of the Tellier. Those communications occurred via telephone and electronic mails.

187. Defendants Waller, Waller Marine and Norton failed to account to Plaintiff for the Tellier Funds.

188. Plaintiff believes Defendants Waller and Waller Marine misrepresented Defendant Waller Marine's contractual position in the Tellier to entice Plaintiff to wire funds to assist with the purchase of the Tellier.

189. Plaintiff believes Defendants misrepresented the value and uniqueness of the Tellier.

190. Plaintiff believes Defendant Waller Marine was attempting to purchase the Tellier without placing Defendants' own money at risk.  Therefore, Defendants Waller, Waller Marine and Norton misrepresented the terms of the Tellier purchase agreement.

191. Plaintiff believes Defendants Waller, Waller Marine and Norton misrepresented to Plaintiff the ability to retrieve the Tellier Funds in the event the Tellier did not pass the inspection and survey process.

192. Plaintiff has cause to believe that in November 2011, the Sellers of the Tellier commenced arbitration against the Defendants Waller and Waller Marine regarding the failed Tellier transaction.

193. Defendants Waller and Waller Marine failed to fully communicate with the Plaintiff regarding the outcome of the arbitration.   Plaintiff has cause to believe Defendants Waller, Waller Marine and Norton, without Plaintiff's consent or approval, entered into an agreement whereby Defendants Waller and Waller Marine agreed to forfeit all or nearly all of the Tellier Funds to the seller of the Tellier.  Defendants Waller and Waller Marine were willing to take this action because Defendants' money was not at stake.

194. Defendants Waller and Waller Marine failed and continues to fail to account to the Plaintiff for the Tellier Funds or the outcome of the arbitration.

195. Defendants Waller and Waller Marine assumed duties to Plaintiff by agreeing to accept Plaintiff's Tellier Funds.

196. Defendants Waller and Waller Marine owed Plaintiff fiduciary duties.

197. Defendant Norton assumed duties to Plaintiff by agreeing to serve as legal counsel in a transaction where Plaintiff's money was solicited and utilized to purchase the Tellier.

198. Defendant Norton knew Plaintiff was relying upon Norton to protect Plaintiff's Tellier Funds.

199. Defendants Norton, Waller and Waller Marine failed to take steps to protect the Tellier Funds.

200. Defendants Norton, Waller and Waller Marine acted recklessly with regard to the disposition of the Tellier Funds.

201. Defendants Norton, Waller and Waller Marine had no reasonable basis to make the factual representations to Plaintiff regarding the Tellier.

202. Defendants conspired to deprive Plaintiff of its interest in the Tellier.

203. Defendants' scheme involved multiple acts utilizing electronic mails, interstate and international electronic communications and wire transfers to deprive Plaintiff of the Tellier Funds.

204. Defendants' scheme involved recklessly inducing Plaintiff to pay the deposit on the Tellier by providing false information to Plaintiff.  Plaintiff's money has now been lost due to Defendants' reckless conduct.

205. Defendants, as an enterprise, have a pattern of fraudulently inducing third parties to fund business transactions on behalf of Defendants by misrepresenting the underlying facts

relating to those transactions.  The Tellier Transaction and the Symphony Transaction are two (2) instances of such pattern conduct.

206. All of the prohibited acts committed by Defendants occurred after January 1, 2011.

207. Plaintiff has been damaged by Defendants' pattern of conduct and scheme.

208. Defendants' conduct constitutes prohibited activity under 18 U.S.C. § 1962.

209. Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to treble damages, together with costs, including reasonable attorney's fees.

WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller, Waller Marine Inc., W$^2$ Limited, Waller Bermuda, Ltd., Polar Energy (Jersey) Limited and Taylor Norton, jointly and severally, and award Plaintiff damages in the amount of two million, two hundred fifty thousand dollars ($2,250,000.00), together with interest, attorney's fees and related litigation costs and for all other relief that is just and proper in the premises.

## COUNT II.

## CONVERSION

### (Symphony Transaction)

210. Plaintiff hereby incorporates rhetorical paragraphs 1 through 62 as if fully set forth herein.

211. Defendants Waller, Waller Marine and the other entity Defendants knew the funds realized from the Sale belonged to the Plaintiff.

212. Defendants Waller, Waller Marine and the other entity Defendants knew the security interest in the Symphony was intended to insure the repayment of the Loan.

213. Defendants Waller, Waller Marine and the other entity Defendants conspired to seize the Symphony, retitle the same in a foreign country, sell the Symphony and funnel the funds to Defendants Waller and Waller Marine.

214. Defendants Waller, Waller Marine and the other entity Defendants knowingly conspired to take unauthorized possession of the Symphony.

215. Defendants Waller, Waller Marine and the other entity Defendants knowingly conspired to take unauthorized possession of the funds realized from the Sale.

216. Defendants Waller, Waller Marine and the other entity Defendants sold the Symphony for approximately one third (1/3) of its fair market salvage value.

217. Upon information and belief, the sum of three million, two hundred thousand dollars ($3,200,000.00) was wired into the bank account of Defendant Waller Marine at the direction of Defendants Waller and Norton.

218. Defendants conspired to convert property belonging to the Plaintiff.

219. Plaintiff has demanded a return of the funds realized from the Sale.

220. Despite repeated demands, Defendants have knowingly and willfully refused to return the funds to Plaintiff.

221. Defendants' conduct constitutes conversion under Indiana law.

222. Plaintiff is entitled to statutory damages pursuant to Indiana Code §34-24-3-1, including but not limited to the following:

    a. Treble damages of three times the value of Plaintiff's interest in the Symphony. The amount of treble damage would be seven million, five hundred thousand dollars ($7,500,000.00);

    b. Interest; and

c. Attorney's fees and related litigation costs.

WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller, Waller Marine Inc., W$^2$ Limited, Waller Bermuda, Ltd., Polar Energy (Jersey) Limited and Taylor Norton, jointly and severally, and award Plaintiff damages in the amount of seven million, five hundred thousand dollars ($7,500,000.00), together with interest, attorney's fees and related litigation costs and for all other relief that is just and proper in the premises.

## COUNT III.

## BREACH OF CONTRACT

(Symphony Transaction)

223. Plaintiff hereby incorporates rhetorical paragraphs 1 through 62 as if fully set forth herein.

224. Plaintiff and Defendant Waller entered into an agreement.  The agreement included the following terms and conditions:

a. Plaintiff would loan two million, five hundred thousand dollars ($2,500,000.00) for use on the Nigerian Project.

b. The funds would be utilized to retire existing debt on the Symphony and for other project-related expenses.

c. The Symphony would be pledged as collateral.

d. Plaintiff would have a first lien security position on the Symphony.

e. Defendant Waller and/or Defendant Waller Marine would create a perfected security interest to be placed on the Symphony.

f. In the event Plaintiff's Loan was not timely repaid, the Symphony would be seized, sold and the proceeds utilized to fully repay Plaintiff.

g.    Defendant Waller and/or Defendant Waller Marine advised Plaintiff the Symphony had a fair market salvage value of ten to twelve million dollars ($10,000,000.00 to $12,000,000.00).

h.    Defendant Waller repeatedly assured Plaintiff the value of the Symphony was four to five (4 to 5) times the amount of the Loan.

225. The Loan was not repaid.  Defendants Waller and Waller Marine failed to repay the Loan.

226. Defendant Waller and/or Defendant Waller Marine breached the Agreement by engaging in the following conduct:

a.    Failing to properly prepare the instruments perfecting the security interest;

b.    Failing to properly perfect the security interest;

c.    Failing to properly execute upon the Symphony;

d.    Failing to protect, preserve and secure Plaintiff's security position;

e.    Failing to sell the Symphony for a reasonable amount impairing its value; and

f.    Failing to account and remit to Plaintiff the proceeds from the Sale.

227. Plaintiff has suffered damage due to the breach of agreement.

WHEREFORE, Plaintiff Diversity Max, LLC, by counsel, respectfully requests the Court to enter judgment in favor of the Plaintiff and against the Defendants David Waller and Waller Marine, Inc. and award Plaintiff damages to adequately compensate it for the breach of contract in the sum of two million, five hundred thousand dollars ($2,500,000.00), together with interest, costs and for all other relief that is just and proper in the premises.

COUNT IV.

FRAUDULENT CONVEYANCE

(Symphony Transaction)

228. Plaintiff hereby incorporates rhetorical paragraphs 1 through 62 and paragraphs 210 through 222 as if fully set forth herein.

229. The Defendants conspired to transfer ownership of the Symphony to another entity created by Defendant Waller for the purpose of depriving Plaintiff of its interest in the Symphony.

230. The Symphony was transferred to Defendant Waller Bermuda for little or no consideration.

231. Defendant Waller Bermuda had no rightful claim to the Symphony.

232. The Defendants acted willfully, intentionally and maliciously in transferring title to the Symphony to Defendant Waller Bermuda.

233. The transfer of title to the Symphony was done without the knowledge or consent of the individual shareholders/unitholders of $W^2$.

234. The conduct of the Defendants constitute a fraudulent conveyance.

235. The fraudulent conveyance enabled the Defendants to secretly sell the Symphony to a third party in a quickly completed transaction for substantially less than its fair market salvage value.  The Defendants were unable to engage in a legitimate transparent sales process out of fear that the Defendants' conduct would be discovered by Plaintiff.

236. The Defendants have converted the proceeds from the Sale of the Symphony, which the Defendants were able to realize as a direct result of the fraudulent conveyance.

237. The Defendants' conduct constitutes criminal mischief as defined by Ind. Code § 35-43-1-2(a)(2), in that the Defendants wrongfully deprived Plaintiff of its interest in the Symphony by deceptive conduct.

238. Plaintiff is entitled to statutory damages pursuant to Indiana Code §34-24-3-1, including but not limited to the following:

    d.  Treble damages of three times the value of Plaintiff's interest in the Symphony. The amount of treble damage would be seven million, five hundred thousand dollars ($7,500,000.00);

    e.  Interest; and

    f.  Attorney's fees and related litigation costs.

WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller, Waller Marine Inc., $W^2$ Limited, Waller Bermuda, Ltd., Polar Energy (Jersey) Limited and Taylor Norton, jointly and severally, and award Plaintiff damages in the amount of seven million, five hundred thousand dollars ($7,500,000.00), together with interest, attorney's fees and related litigation costs and for all other relief that is just and proper in the premises.

<u>COUNT V.</u>

<u>BREACH OF FIDUCIARY DUTY</u>

(Symphony Transaction)

239. Plaintiff hereby incorporates rhetorical paragraphs 1 through 62, paragraphs 210 through 222 and paragraphs 228 through 238 as if fully set forth herein.

240. Defendants Waller and Waller Marine induced Plaintiff to invest in and join Defendant Waller in the Nigerian Project. Defendants Waller and Waller Marine also encouraged and induced Plaintiff to loan money for use in the Nigerian Project.

241. Defendant Waller Marine was fellow owner in a joint venture with Plaintiff. The joint venture entity was $W^2$.

242. Defendant Waller owns a majority interest in Defendant Waller Marine. Defendant Waller Marine owned fifty one percent (51%) of the interest in $W^2$.

243. Defendants Waller and Waller Marine owed fiduciary duties to Plaintiff as a result of the joint venture.

244. Defendants Waller and Waller Marine owed Plaintiff duties, including, but not limited to, the following:

    a. The duty to keep Plaintiff fully informed of all matters relating to $W^2$ and/or the Nigerian Project affecting Plaintiff;

    b. The duty to account to Plaintiff for all funds relating to the Nigerian Project;

    c. The duty to properly account to Plaintiff relating to the disposition of the Symphony;

    d. The duty to obtain fair market value when disposing of the Symphony;

    e. The duty to not financially benefit at the expense of Plaintiff;

    f. The duty to be truthful and not omit material information when communicating with Plaintiff;

    g. The duty to protect the interest of Plaintiff; and

    h. The duty to fulfill Defendants Waller and Waller Marine's contractual commitments to Plaintiff.

245. Defendants Waller and Waller Marine breached their duties to Plaintiff by the following actions and omissions:

    a. Failing to keep Plaintiff informed regarding the business activities of $W^2$;

    b. Retitling the Symphony without Plaintiff's knowledge or consent;

    c. Failing to account to Plaintiff for funds realized from the Nigerian Project;

    d. Selling the Symphony for materially less than its fair market salvage value;

    e. Taking funds from the Sale for Defendants Waller and Waller Marine's personal benefit;

    f. Structuring the security interest in the Symphony in a manner which did not protect the interest of Plaintiff and which did not ensure funds from the Sale were paid to the Plaintiff;

    g. Placing Defendants' financial interest above the interest of Plaintiff;

    h. Misrepresenting to Plaintiff the security position of Plaintiff in the Symphony; and

    i. Misrepresenting the fair market salvage value of the Symphony.

246. Defendants Waller and Waller Marine's breach of fiduciary duty was willful, knowing and malicious.

247. The Plaintiff has suffered monetary damages due to the breach of fiduciary duty by Defendants Waller and Waller Marine.

WHEREFORE, Plaintiff Diversity Max, LLC, by counsel, respectfully requests that the Court enter a judgment in favor of Plaintiff and against Defendants David Waller and Waller Marine, Inc. in an amount of compensatory damages adequate to fully compensate Plaintiff, for an award and punitive damages sufficient to deter Defendants David Waller and Waller Marine, Inc.

and similarly situated parties from engaging in like conduct, for costs, interest and all other relief that is just and proper in the premises.

COUNT VI.

FRAUD, CONSTRUCTIVE FRAUD AND ABUSE OF PROCESS

(Symphony Transaction)

248. Plaintiff hereby incorporates rhetorical paragraphs 1 through 62, paragraphs 210 through 222 and paragraphs 228 through 247 as if fully set forth herein.

249. Plaintiff and Defendants Waller and Waller Marine engaged in joint business transactions. Once such business transaction was the Nigerian Project.

250. Defendants Waller and Waller Marine enticed and induced Plaintiff to loan money for use on the Nigerian Project.

251. Defendant Waller sought to coerce Plaintiff to invest funds in order to minimize the amount of money required of Waller to fund the Nigerian Project.

252. Defendant Waller owns and controls Defendant Waller Marine.

253. Defendant Waller and other employees of Defendant Waller Marine met with Plaintiff and communicated with Plaintiff via telephone and other electronic communications. During the meetings and communications, Defendant Waller, on behalf of himself and Defendant Waller Marine, and other Waller Marine employees, made multiple factual representations to Plaintiff.

254. The misrepresentations of Defendants occurred in meetings at Defendant Waller's Houston, Texas offices.

255. The employees of Defendant Waller Marine involved in the meetings included David Waller, Tom Laird and Bill McCutchins.

256. The meetings occurred in the spring and summer of 2011.

257. The factual misrepresentations included the following:

    a.  Defendants had experience and expertise with large scale energy projects;

    b.  Defendants had expertise with valuing large marine vessels such as the Symphony;

    c.  Defendants had examined Yellowe and Global's agreements and arrangements with major oil companies and such arrangements and agreements were valid;

    d.  Defendant had thoroughly vetted the Nigerian Project and was confident of its prospects for success, and were without knowledge of any facts to call the Nigerian Project into doubt;

    e.  Defendants were familiar with Yellowe and Global and had no knowledge of any reasons to doubt Yellowe's veracity;

    f.  Funds were immediately needed to pay Nigerian Project debts and retire debt on the Symphony;

    g.  The fair market salvage value of the Symphony was ten to twelve million dollars ($10,000,000.00 to $12,000,000.00);

    h.  The Nigerian Project and Symphony would be lost without the loan;

    i.  If the Plaintiff agreed to immediately loan Defendants Waller and/or Waller Marine two million, five hundred thousand dollars ($2,500,000.00), the Loan would be secured by a first lien position on the Symphony;

    j.  If there was a default on the Loan, the Symphony would be seized and sold to repay the Loan; and

    k.  The fair market salvage value of the Symphony was more than adequate to repay the Loan.

258. Plaintiff, in direct reliance upon the representations of Defendants, wired two million, five hundred thousand dollars ($2,500,000.00) to Defendants Waller and Waller Marine.

259. Defendant Waller then took control of Plaintiff's money and redirected the money to Yellowe and Global.

260. Defendants Waller and Waller Marine failed to repay the Loan.

261. Defendants, unknown to Plaintiff, then engaged in a scheme, to seize the Symphony.

262. Defendants, unknown to Plaintiff, then engaged in a scheme to retitle the Symphony in a new name.

263. Defendants, unknown to Plaintiff, filed a federal lawsuit in an effort to gain control of the Symphony.  Defendants did not disclose to the Court of the existence of the Plaintiff and Plaintiff's interest in the Symphony.

264. Defendants improperly utilized the Courts to take control of the Symphony.

265. Defendants sold the Symphony in a hurried private sale in Nigeria, disregarding industry norms for valuing and selling large ocean-going vessels.

266. Defendants then engaged in a scheme to have proceeds wire transferred to the private bank account of Defendant Waller Marine.  The wire transfer was from a foreign bank account to an account in Houston, Texas.

267. Defendants concealed the Sale and wire transfer from Plaintiff.

268. Defendants intended to conceal their wrongful conduct from Plaintiff and conceal from Plaintiff their scheme to convert the Symphony and convert the proceeds from the Sale of the Symphony.

269. Defendants have refused to remit any portion of the Symphony Sale proceeds to Plaintiff.

270. Defendants misrepresented the nature of the security interest in the Symphony to the Plaintiff.

271. Defendants' conduct was fraudulent and an abuse of process.

272. Defendants stood in a position of a special relationship with Plaintiff entitling Plaintiff to bring a claim for constructive fraud.

273. Plaintiff has been damaged by the fraudulent conduct and abuse of process of the Defendants in the sum of not less than two million, five hundred thousand dollars ($2,500,000.00).

WHEREFORE, Plaintiff Diversity Max, LLC, by counsel, respectfully requests the Court enter judgment in favor of Plaintiff and against Defendants David Waller, Waller Marine, Inc., $W^2$ Limited, Waller Bermuda, Ltd., and Polar Energy (Jersey) Limited, jointly and severally, and award Plaintiff damages sufficient to compensate Plaintiff for the fraud, constructive fraud and abuse of process, for an award of punitive damages sufficient to deter Defendants and similarly situated parties from engaging in like conduct, interest, costs and all other relief that is just and proper in the premises.

<u>COUNT VII.</u>

<u>UNJUST ENRICHMENT</u>

(Symphony Transaction)

274. Plaintiff hereby incorporates rhetorical paragraphs 1 through 62, paragraphs 210 through 222 and paragraphs 228 through 273 as if fully set forth herein.

275. Plaintiff's interest in the Symphony was superior to the interest of the Defendants.

276. Defendants, through a series of unlawful acts, conspired to deprive Plaintiff of its interest in the Symphony.

277. Defendants, through a series of unlawful acts, conspired to retitle the Symphony.

278. Defendants conspired to transfer the sales proceeds from the Symphony to Defendant Waller Marine.

279. Defendants Waller and Waller Marine kept all funds realized from disposing of the Symphony.

280. Defendants Waller and Waller Marine had no right or interest in the funds from the Sale.

281. Plaintiff was lawfully entitled to the proceeds from the Sale.

282. Defendant Waller and Waller Marine have been unjustly enriched by engaging in a series of unlawful acts enabling them to retain the proceeds from the Sale.

WHEREFORE, Plaintiff Diversity Max, LLC, by counsel, respectfully requests the Court enter judgment in favor of Plaintiff and against Defendants David Waller, Waller Marine Inc., $W^2$ Limited, Waller Bermuda, Ltd., and Polar Energy (Jersey) Limited, jointly and severally, and award Plaintiff damages to adequately compensate Plaintiff for the unjust enrichment, together with interest, costs and all other relief that is just and proper in the premises.

COUNT VIII.

BREACH OF FIDUCIARY DUTY AND FRAUDULENT CONCEALMENT

(Tellier Transaction)

283. Plaintiff hereby incorporates rhetorical paragraphs 1 through 11 and paragraphs 63 through 98 as if fully set forth herein.

284. Defendants Waller and Waller Marine negotiated, drafted and executed all transaction documents related to the purchase and disposition of the Tellier.

42

285. Defendants Waller and Waller Marine represented to Plaintiff that all required steps were taken to protect Plaintiff's investment in the Tellier, including contractual provisions mandating a refund of Plaintiff's funds.

286. Defendants Waller and Waller Marine represented to Plaintiff that the seller of the Tellier had a duty to refund Plaintiff's funds if the Tellier did not pass survey/inspection.

287. Defendants Waller and Waller Marine agreed to be responsible for and manage the funds of Plaintiff.

288. Plaintiff had no expertise in inspecting, evaluating or purchasing large marine vessels.

289. Plaintiff relied upon the expertise of Defendants Waller and Waller Marine.  Defendants Waller and Waller Marine knew Plaintiff was relying upon Defendants.

290. Plaintiff was repeatedly advised Plaintiff's funds would be refunded if the Tellier was not suitable for the DR Project and did not pass the survey and inspection process.

291. The Tellier failed inspection according to Defendants Waller and Waller Marine.

292. Plaintiff should have been entitled to a refund of Plaintiff's DR Project funds according to repeated assurances by Defendants Waller and Waller Marine.

293. For reasons which Defendants Waller and Waller Marine have not explained to Plaintiff, Defendants Waller and Waller Marine entered into an agreement with the seller of the Tellier, apparently forfeiting all or nearly all of Plaintiff's DR Project funds.

294. The whereabouts of the Tellier is unknown. Defendants have not explained the disposition of the Tellier to the Plaintiff.

295. Defendants Waller and Waller Marine have attempted to conceal their actions from Plaintiff in an effort to avoid liability.

296. Defendants Waller and Waller Marine have refused and failed to account to Plaintiff regarding the disposition of the Tellier.

297. Defendants Waller and Waller Marine have acted without Plaintiff's knowledge or consent.

298. Defendants Waller and Waller Marine owed Plaintiff fiduciary duties.  Those duties include the following:

    a.   Act in the Plaintiff's best interest;

    b.   Take all reasonable actions to protect the DR Project Funds of Plaintiff;

    c.   Provide truthful and accurate information regarding the Tellier;

    d.   Not place Defendants' interest above the interest of the Plaintiff;

    e.   Refund the DR Project Funds consistent with Defendants Waller and Waller Marine's representation to Plaintiff; and

    f.   Ensure the Tellier transaction documents were prepared sufficient to protect the interest of Plaintiff.

299. Defendants Waller and Waller Marine breached the aforementioned duties by the following acts and omissions:

    a.   Failure to accurately and properly negotiate and prepare documents related to the purchase of the Tellier;

    b.   Failure to properly supervise the survey and inspection of the Tellier;

    c.   Failure to take the necessary action to ensure the security and return of the Plaintiff's DR Project funds;

    d.   Agreeing to a forfeiture of Plaintiff's DR Project funds;

    e.   Failing to secure control of the Tellier to ensure the return of Plaintiff's DR Project funds;

    f.   Acting without the Plaintiff's knowledge or consent; and

    g.   Concealing information from Plaintiff.

300. Plaintiff has been damaged by Defendants Waller and Waller Marine's breach of duties.

301. The breach of duties is the proximate case of Plaintiff's damages.

302. Plaintiff has suffered a pecuniary loss of not less than $750,000.00.

WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller and Waller Marine Inc., jointly and severally, and award Plaintiff damages sufficient to compensate Plaintiff for breach of fiduciary duty and fraudulent concealment, together with interest, costs and all other relief that is just and proper in the premises.

## COUNT IX.

## NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

### (Tellier Transaction)

303. Plaintiff hereby incorporates rhetorical paragraphs 1 through 11, paragraphs 63 through 98 and paragraphs 283 through 302 as if fully set forth herein.

304. Defendants Waller and Waller Marine negotiated, drafted and executed all transaction documents related to the purchase and disposition of the Tellier.

305. Defendants Waller and Waller Marine represented to Plaintiff that all required steps were taken to protect Plaintiff's investment in the Tellier, including contractual provisions mandating a refund of Plaintiff's funds.

306. Defendants Waller and Waller Marine represented to Plaintiff that the seller of the Tellier had a duty to refund Plaintiff's funds if the Tellier did not pass survey/inspection.

307. Defendants Waller and Waller Marine agreed to be responsible for and manage the DR Project funds of Plaintiff.

308. Plaintiff had no expertise in inspecting, evaluating or purchasing large marine vessels.

309. Plaintiff relied upon the expertise of Defendants Waller and Waller Marine. Defendants Waller and Waller Marine knew Plaintiff was relying upon Defendants.

310. Plaintiff was repeatedly advised Plaintiff's funds would be refunded if the Tellier was not suitable for the DR Project and did not pass survey and inspection.

311. The Tellier failed inspection according to Defendants Waller and Waller Marine.

312. Plaintiff should have been entitled to a refund of Plaintiff's DR Project funds according to repeated assurances by Defendants Waller and Waller Marine.

313. For reasons which Defendants Waller and Waller Marine have not explained to Plaintiff, Defendants Waller and Waller Marine entered into an agreement with the seller of the Tellier apparently forfeiting all or nearly all of Plaintiff's DR Project funds.

314. The whereabouts of the Tellier is unknown. Defendants have not explained the disposition of the Tellier to the Plaintiff.

315. Defendants Waller and Waller Marine have acted without Plaintiff's knowledge or consent.

316. Defendants Waller and Waller Marine voluntarily assumed and owed Plaintiff duties.

317. Waller and Waller Marine breached the aforementioned duties by the following acts and omissions:

    a.  Failure to accurately and properly negotiate and prepare documents related to the purchase of the Tellier;

    b.  Failure to properly supervise the survey and inspection of the Tellier;

    c.  Failure to take the necessary action to ensure the security and return of the Plaintiff's DR Project funds;

    d.  Agreeing to a forfeiture of Plaintiff's DR Project funds;

    e.  Failing to secure control of the Tellier to ensure the return of Plaintiff's funds;

    f.  Acting without the Plaintiff's knowledge or consent; and

    g.  Concealing information from Plaintiff.

318. Plaintiff has been damaged by Defendants Waller and Waller Marine's breach of duties.

319. The breach of duties is the proximate case of Plaintiff's damages.

320. Plaintiff has suffered a pecuniary loss of not less than seven hundred fifty thousand dollars ($750,000.00) because of the breach.

    WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller and Waller Marine, Inc., jointly and severally, and award Plaintiff damages sufficient to compensate Plaintiff for negligence and negligent misrepresentation of Defendants, together with interest, cost and all other relief that is just and proper in the premises.

COUNT X.

BREACH OF CONTRACT

(Tellier Transaction)

321. Plaintiff hereby incorporates rhetorical paragraphs 1 through 11, paragraphs 63 through 98 and paragraphs 283 through 320 as if fully set forth herein.

47

322. Defendants Waller and Waller Marine entered into an agreement with Plaintiff. The agreement include the following terms and conditions:

    a. Defendants Waller and Waller Marine were marine experts. Defendants Waller and Waller Marine knew Plaintiff lacked any expertise with any marine vessels;

    b. Defendants Waller and Waller Marine had a contractual interest in the Tellier;

    c. The contract to purchase to Tellier was or would be drafted in such a manner as to ensure deposits would be refunded if the Tellier did not pass inspections and surveys or was not suitable for the Plaintiff's requirements;

    d. The Tellier was unique in the world and particularly suited for the DR Project;

    e. Plaintiff's funds were to be used to purchase the Tellier, which would be utilized in the DR Project;

    f. The Tellier would be professionally inspected and surveyed;

    g. If the Tellier did not meet standards set by the Defendants, Plaintiff's money would be refunded; and

    h. Plaintiff's funds would be secure because of the substantial value of the Tellier, which greatly exceeded the funds being sought from Plaintiff and because of the purchase contract negotiated by Defendants Waller and Waller Marine.

323. Plaintiff wired to Defendants Waller and Waller Marine the Tellier Funds in the amount of seven hundred fifty thousand dollars ($750,000.00).

324. Defendants subsequently informed Plaintiffs that the Tellier did not pass the inspection and survey process.

325. Plaintiff requested the Tellier Funds be refunded as agreed upon by Defendants Waller and Waller Marine.

326. Defendants Waller and Waller Marine, through various employees, again assured Plaintiff the Tellier Funds would be refunded to Plaintiff.

327. Plaintiff made repeated demands for the Tellier Funds.

328. The Tellier Funds were never refunded.

329. Defendants Waller and Waller Marine breached their contract with Plaintiff by engaging in the following conduct:

   a. Failing to properly inform the Plaintiff of the value and uniqueness of the Tellier;

   b. Failing to properly draft the purchase agreement to secure Plaintiff's funds;

   c. Failing to accurately inform Plaintiff of the ability to retrieve the Tellier Funds in the event the Tellier did not pass inspection and survey;

   d. Failing to communicate to Plaintiff the explanation why the Tellier failed the inspection and survey process;

   e. Forfeiting the Plaintiff's interest in the Tellier; and

   f. Failing to return the Tellier Funds to the Plaintiff.

330. Plaintiff suffered a pecuniary loss of not less than seven hundred fifty thousand dollars ($750,000.00) because of the breach.

WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller and Waller Marine, Inc., jointly and severally, and award Plaintiff damages sufficient to compensate the Plaintiff for the breach of contract in a sum not less than seven hundred fifty thousand dollars ($750,000.00), together with interest, cost and all other relief that is just and proper in the premises.

## COUNT XI.

## PROMISSORY ESTOPPEL

(Tellier Transaction)

331. Plaintiff hereby incorporates rhetorical paragraphs 1 through 11, paragraphs 63 through 98 and paragraphs 283 through 330 as if fully set forth herein.

332. Defendants Waller and Waller Marine made multiple promises to Plaintiff.  The promises included the following:

    a.   Defendants Waller and Waller Marine would engage competent and experienced legal counsel and other experts to protect Plaintiff's interest and funds utilized to acquire an interest in the Tellier;

    b.   The Tellier Funds utilized to acquire the Tellier would be refunded to the Plaintiff if the Tellier did not meet the requirements of the DR Project and did not pass survey and inspection;

    c.   Plaintiff would not be at risk of losing Plaintiff's money, which would be promptly refunded if Defendants Waller and Waller Marine did not purchase the Tellier; and

    d.   Defendants Waller and Waller Marine would utilize its marine expertise to prepare documents related to the purchase of the Tellier.

333. According to Defendants Waller and Waller Marine, the Tellier did not pass the survey and inspection process.

334. According to Defendants Waller and Waller Marine, the Plaintiff was to receive a refund of Plaintiff's funds.

335. Despite demands, Defendants Waller and Waller Marine have not returned Plaintiff's funds.

336. Defendants Waller and Waller Marine breached its promises to Plaintiff.

337. Defendants Waller and Waller Marine's breach has caused monetary damage to Plaintiff.

338. Plaintiff has suffered a pecuniary loss of seven hundred and fifty thousand dollars ($750,000.00) because of the breach.

WHEREFORE, Plaintiff, Diversity Max, LLC, by counsel, respectfully prays that the Court enter judgment in its favor and against Defendants David Waller and Waller Marine, Inc., jointly and severally, and award Plaintiff damages sufficient to compensate Plaintiff for the breach in the amount of seven hundred fifty thousand dollars ($750,000.00), together with interest, cost and all other relief that is just and proper in the premises.


Respectfully submitted

EST Law, LLC


/s/ E. Scott Treadway
E. Scott Treadway (#14675-49)
*Attorney for Plaintiff Diversity Max, LLC*


E. Scott Treadway (#14675-49)
EST Law, LLC
10401 North Meridian Street
Suite 225
Indianapolis, IN 46290
(317) 706-6718
Scott@estlawllc.com

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff, Diversity Max, LLC, by counsel, requests a trial by jury.

Respectfully submitted

EST Law, LLC


<u>/s/ E. Scott Treadway</u>
E. Scott Treadway (#14675-49)
*Attorney for Plaintiff Diversity Max, LLC*


E. Scott Treadway (#14675-49)
EST Law, LLC
10401 North Meridian Street
Suite 225
Indianapolis, IN 46290
(317) 706-6718
Scott@estlawllc.com