UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIVERSITY MAX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-02066-RLY-MPB |
| | ) | |
| DAVID WALLER, | ) | |
| W2 LIMITED, | ) | |
| WALLER MARINE, INC., | ) | |
| WALLER BERMUDA, LTD., | ) | |
| POLAR ENERGY (JERSEY) LIMITED, | ) | |
| and TAYLOR NORTON, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

This matter comes before the court on motion of the defendants, David Waller, W2 Limited, Waller Marine, Inc., Waller Bermuda, Ltd., and Polar Energy (Jersey) Limited (collectively, "Defendants"), to dismiss the Complaint filed by the plaintiff, Diversity Max, LLC, for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively.[1] In the alternative, Defendants move for transfer of venue to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a), 28 U.S.C. § 1631, or 28 U.S.C. § 1404(a). For reasons set forth below,

---

[1] Defendant, Taylor Norton, Chief General Counsel for Waller Marine, Inc., had not received service of process at the time Defendants filed their motion. Thus, Mr. Norton is not a party to the motion. (Filing No. 19 at 1).

the court **GRANTS** Defendants' alternative motion to transfer, and **DENIES** the motion to dismiss.

**I.     Background**

This action concerns a multimillion dollar joint venture gone awry, complete with allegations of parties selling investment property and absconding with the proceeds. At this posture, thankfully, the court confines its inquiry to allegations related to Defendants' contacts with Indiana, the locations of the involved individuals and entities, and the nature of the harm felt by Diversity.

**A.     The parties**

Diversity is a limited liability company with a principal place of business in Indianapolis, Indiana. Diversity engages in various energy-related business ventures. (Filing No. 1 ("Compl.") at ¶ 12). Jeffrey Greenwalt ("Greenwalt"), an Indiana resident, solely owns and manages Diversity. (Filing No. 32-1 ("Greenwalt Aff.") ¶ 5). Defendant David Waller ("Waller"), a Texas resident, solely owns and controls Waller Marine ("Marine"), W2 Limited ("W2"), and Waller Bermuda; and Waller owns 99 percent of Polar Energy ("Polar"). (Filing No. 20-2 ("Waller Decl.") ¶ 4). As such, he communicated and transacted in his capacity as an agent of the defendant entities. (*Id.* ¶ 9). Marine and Polar have their principal places of business in Houston, Texas; and W2 and Bermuda have their principal places of business in the Cayman Islands and Bermuda, respectively. (*Id.* ¶¶ 10–13).

### B.     The Nigeria Project and the Symphony Vessel

In May 2011, Isaac Gibson of Wintara Energy, Inc. ("Wintara"), introduced Waller to Greenwalt as a potential investor for the Nigerian Project.  Waller informed Greenwalt that Marine had explored a joint venture project with Global Energy USA, Inc., Global Integrated Energy System Limited, and Global Gas and Refining, Ltd. (collectively "Global") that involved refining natural gas at a facility in Nigeria and using a marine vessel, the "Symphony," to store the resulting natural gas liquids (the "Nigeria Project").  (Compl. ¶¶ 14–15; Waller Decl. ¶ 16).  Following the telephone discussion with Waller, Greenwalt became interested in the Nigeria Project.  (Compl. ¶ 16).

In the spring 2011, before any transactions occurred, Waller and Kenneth Yellowe ("Yellowe"), owner and operator of Global, solicited Diversity and Wintara for immediate capital infusions to secure Global's interest in the Nigerian Project.  (*Id.* ¶ 17).  Diversity alleges that Waller had many telephone conversations with Greenwalt while he operated from his Indiana residence.  (*See* Greenwalt Aff. ¶ 26–27).  However, Diversity does not dispute that initial discussions concerning a loan occurred during face-to-face meetings at Marine's Houston, Texas office, as well as at Global's Houston office.  During these meetings, Waller allegedly misrepresented Marine's experience in large-scale energy projects, his confidence in Global's business prospects, and the consequences of not obtaining the sufficient funding.  (Compl. ¶ 254, 257; Waller Decl. ¶ 30).  The parties contemplated a loan from Diversity to Marine in the amount of $2.5 million, which would be used to retire existing debt on the Symphony and fund other project-related expenses.  (Compl. ¶¶ 23, 27).  Diversity agreed to make two wire

3

transfers of $1.25 million in exchange for a "first lien security position" on the vessel. (*Id.* ¶ 22). Waller then caused Polar to execute a Letter of Agreement ("LOA") with Global providing for the transfer of $5 million to Global in exchange for Global's execution of a deed of trust pledging the Symphony as security for repayment. (*See* Waller Decl. ¶¶ 40–43). Diversity's loan accounted for half of the total transfer. (*Id.* ¶ 44; Compl. ¶ 38). Waller advised Diversity that it had taken the necessary steps to perfect a security interest in the Symphony. (Compl. ¶ 22).

Following execution of the loan, Diversity, Wintara, and Marine formed W2 for purposes of investing in the Nigeria Project with Global and Yellowe. (*Id.* ¶ 19). The agreement provided that Marine would own 51 percent of W2, and Wintara and Diversity would own the remaining 49 percent.[2] (*Id.*). Diversity alleges that the urgency for funding, as represented by Waller, explains why it did not wait to transfer the funds to Marine until the parties formed W2. (*Id.* ¶ 25). In any event, activity in the Nigeria Project continued for a period of months, but Global and Yellowe ultimately failed to fulfill their repayment commitments. (*Id.* ¶ 29). This resulted in a tiered collection effort where Waller attempted to seize its collateral—i.e., the Symphony—from Global, and

---

[2] For the sake of clarity, the court notes Defendants' position that, under the agreement, the ownership interests of Wintara and Diversity were contingent on meeting their funding commitments. Accordingly, Defendants contend, Waller retained his 100 percent ownership in W2.

Diversity demanded from Waller and Marine the repayment of its loan.[3] (*See id.* ¶¶ 29–30, 35–37).

### C. The aftermath

In June 2012, Polar and W2, at Waller's direction, sought a declaratory judgment and damages against Global in the Southern District of Texas, Case Number 4:12-cv-01779, seeking a declaration that Polar held legal title to the Symphony. (Compl. ¶ 37; Waller Decl. ¶ 47). Global answered with counterclaims against Polar and W2 and third-party claims against Greenwalt and Wintara. (Waller Decl. ¶ 47). Diversity alleges that Taylor Norton ("Norton"), General Counsel for Marine, periodically communicated with Greenwalt to update him on the status of Polar's recovery efforts. (Compl. ¶ 40). Ultimately, the lawsuit was unsuccessful. (*Id.* ¶ 41).

Following dismissal of the declaratory action, Norton allegedly ceased communication with Greenwalt. (*Id.* ¶ 42). Diversity then learned that Waller traveled to Bermuda, caused W2 to obtain control of the Symphony, formed Waller Bermuda, and had the Symphony sold to Waller Bermuda for ten dollars. Waller Bermuda then sold the Symphony to Jampur International for $3.2 million and had the proceeds transferred to Marine's bank account. (*Id.* ¶¶ 46–52).

---

[3] Defendants' dispute Diversity's characterization of its transfer as a "loan" but recognize that this issue has no bearing on a motion to dismiss under Rules 12(b)(2) or 12(b)(3).

Diversity alleges that Waller, through his defendant entities, concealed the recovery and sale of the Symphony and converted the proceeds.[4] The court now turns to Defendants' motion to dismiss or, in the alternative, motion to transfer.

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of an action if the court lacks personal jurisdiction. When a defendant raises the lack of personal jurisdiction as a defense, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the court relies on the submission of written materials to determine jurisdiction, the plaintiff need only make a prima facie showing that jurisdiction exists. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). However, a plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction" if the defendant presents evidence to the contrary. *Purdue Research Found.*, 338 F.3d at 783. Under the prima facie standard, the court must resolve any conflicts in the supporting materials in the plaintiff's favor. *Id.*

The court must also grant dismissal upon a showing that venue is improper. Fed. R. Civ. P. 12(b)(3). Similar to a Rule 12(b)(2) analysis, a challenge under Rule 12(b)(3) places the burden of establishing proper venue on the plaintiff. *Faur v. Sirius Int'l Ins.*

---

[4] Diversity also asserts claims arising from a similar joint agreement involving a natural gas development and transport project in the Dominican Republic. In opposition to dismissal, Diversity does not rely on allegations stemming from this transaction, which closely parallel those made with respect to the Nigeria Project. Thus, the court limits its consideration accordingly.

6

*Corp.*, 391 F. Supp. 2d 650, 657 (N.D. Ill. 2005).  The court may consider evidence beyond the pleadings, and it must resolve factual conflicts and make inferences in favor of the plaintiff.  *Strategic Mgmt. Harmony, LLC v. Enhanced Bus. Reporting Consortium, Inc.*, No. 4:05-cv-180, 2007 WL 2316484, at *5 (S.D. Ind. Aug. 10, 2007) (quoting *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001)).

**III.    Discussion**

    **A.    Personal Jurisdiction**

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction."  *Purdue Research Found.*, 338 F.3d at 779.  Because Indiana's long-arm statute permits the exercise of personal jurisdiction as far as the federal Due Process Clause permits, the court must determine whether its exercise of jurisdiction over Defendants comports with due process.[5]  *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006); s*ee N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (applying Illinois's long-arm statute, which also extends to the outer constitutional limits).  The due process clause protects an individual from the "binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."  *N. Grain Mktg., LLC*, 743 F.3d at

---

[5]     For this reason, the court need not, and should not, consider Diversity's new allegations that Defendants violated Indiana laws governing the issuance, registration, or sale of securities.  Even if the court were to indulge, Diversity's conclusory statements that "Waller was selling a security as defined by Indiana law"; that "overwhelming proof" shows he "knowingly directed the sale . . . to an Indiana resident . . ."; or that "Waller consented to jurisdiction" by breaking the law, do nothing to further its argument.  *See, e.g.*, *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

492 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)) (internal quotation marks omitted).  The court must determine whether the nonresident defendant has "certain minimum contacts" with the forum such that the court's exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Id.* (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

Depending on the nature of the contacts, they create either general or specific jurisdiction over nonresident defendants.  In this case, Diversity asserts only specific jurisdiction, requiring a showing that "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities."  *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp.*, 471 U.S. at 472).  In a case such as this, where the plaintiff asserts claims for intentional torts, the court looks closely at whether the defendant purposefully directed the conduct at the forum state.  *Id.* (citations omitted).  This inquiry guards against the exercise of jurisdiction on account of "random, fortuitous, or attenuated contacts" with the forum state.  *Id.* (internal quotation marks omitted).

Diversity alleges that Defendants actively solicited it to invest in the Nigeria Project and, in doing so, purposefully directed material misrepresentations to an Indiana resident, causing harm in Indiana.  Purposeful direction generally requires a showing of (1) intentional and allegedly tortious conduct; (2) expressly aimed at the forum state; and (3) defendant's knowledge that the effects would be felt in the forum state.

8

*Commissioning Agents, Inc. v. Long*, No. 1:15-cv-62, 2015 WL 6610200, at *10 (S.D. Ind. Oct. 29, 2015) (citing *Tamburo*, 601 F.3d at 703).

  Diversity argues that Defendants purposefully directed solicitation materials to Indiana for the purpose of attracting investment. Diversity's own allegations, however, convince the court that the alleged harm did not arise out of Defendants' minimum contacts with Indiana. Aside from the solicitation material (i.e., prospectus) sent to Diversity, the court finds no evidence to support the claim that Defendants directed any other commercial activity to Indiana. As for contacts with Diversity, Isaac Gibson—*not* Defendants—facilitated the initial telephone contact between Greenwalt and Waller. *See Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1194–95 (7th Cir. 1985) (finding purposeful direction where nonresident defendant initiated the first contact with resident plaintiff and arranged for plaintiff to travel to out-of-state negotiations). The exchange of phone calls and emails following the commencement of the parties' business relationship does not change the outcome because Diversity's residency in Indiana becomes an incidental detail that fails to satisfy the "purposefulness" element. *See N. Grain Mktg., LLC*, 743 F.3d at 493; *see also Advanced Tactical Ordnance Sys, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (confirming that the plaintiff cannot be the only link between the defendant and the forum); *Commissioning Agents, Inc. v. Long*, 2015 WL 6610200, at *13 (noting the Seventh Circuit's requirement that the forum state suffer injury and the "defendant either specifically directed his tortious conduct at the forum or acted with the purpose of causing harm in the forum state").

Diversity also asserts that Defendants availed themselves of the privilege of conducting business in Indiana and therefore should have foreseen the possibility of answering to a lawsuit here.  Diversity alleges that Defendants embarked on a "campaign to find and solicit investors" in Indiana and elsewhere.  They cite, for example, *JPMorgan Chase Bank, N.A. v. Desert Palace, Inc.*, 882 N.E.2d 743, 751–52 (Ind. Ct. App. 2008) and *Commissioning Agents, Inc.*, 2015 WL 6610200, at *11.  Both cases involve defendants who perpetrated many instances of fraud on a long, ongoing basis and the Indiana courts found personal jurisdiction.  In this case, the evidence cited to support Diversity's claim is limited to two "letters of agreement" addressed to recipients in New York and France.  (*See* Filing No. 32-2).  Of course, such evidence says nothing about Defendants' contacts with Indiana.  When the defendants resist jurisdiction, the plaintiff must present evidence to support allegations that purportedly support jurisdiction. *Purdue Research Found.*, 338 F.3d at 783.  Diversity did not meet its burden.[6]

The court finds that its exercise of personal jurisdiction over Defendants exceeds the bounds of the due process clause.  Defendants' contacts with Indiana do not suffice to support the exercise of jurisdiction.  When a party fails to establish the requisite minimum contacts to support jurisdiction, the court need not inquire whether jurisdiction

---

[6] As Defendants note in their Reply Brief, Diversity devotes a single conclusory statement suggesting that RICO claims support jurisdiction in this matter.  (*See* Filing No. 42 at 20 n.13; Filing No. 30 at 20 n.3).  Diversity's footnote does not respond to Defendants' argument as to the inapplicability of 18 U.S.C. § 1965(a).  Thus, Diversity waives the RICO statute as a basis for the court's exercise of personal jurisdiction.

would offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316.

### B. Venue is improper in this district

In the alternative to dismissal, Defendants move for transfer of this action. They concede that venue and jurisdiction would be proper in the Southern District of Texas, Houston Division.

In addition to the court's finding on personal jurisdiction, the court also finds that venue is improper in the Southern District of Indiana. Title 28, United States Code, Section 1391 provides:

> (b) A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"For all venue purposes, an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ." 28 U.S.C. § 1391(c)(2). The court does not have personal jurisdiction over Defendants; nor do they reside in this district for purposes of § 1391(a)(1). As explained above, no party to this litigation has title to the Symphony; and a substantial part of the events and alleged omissions giving rise to Diversity's claims occurred in the Southern District of Texas.

11

## IV. Conclusion

Therefore, having found that the court lacks personal jurisdiction and that venue is improper, and in the interests of justice, the court **DENIES** Defendants' Motion to Dismiss, and **GRANTS** Defendants' Alternative Motion to Transfer pursuant to 28 U.S.C. § 1406(a). The court hereby directs the Clerk of Court to **TRANSFER** this matter to the United States District Court for the Southern District of Texas.

**SO ORDERED** this 31st day of March 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.